

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-2003

# Hollawell v. Gillis

Precedential or Non-Precedential: Non-Precedential

Docket 99-3996

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Hollawell v. Gillis" (2003). *2003 Decisions.* Paper 629.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/629

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 99-3996

_____

JOHN HOLLAWELL,

Appellant

v.

FRANK D. GILLIS, Superintendent SCI Coal Township,
WILLIAM WARD, ALLEN CASTOR,
DAHLE BINGAMAN, SEAN RYAN, NICHOLAS MULLER,
GARY LUCHT, MICHAEL WEBSTER, JOHN ENGLE,
DAVID WITHERS, JOHN DOE(S), PBPP MEMBERS/EMPLOYEES,
ATTORNEY GENERAL OF THE COMMONWEALTH OF
PENNSYLVANIA, PENNSYLVANIA BOARD OF PROBATION AND PAROLE

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 4:CV-99-1502)
District Judge: The Honorable Malcolm Muir

_____

_____

No. 01-1063

_____

JOHN HOLLAWELL,

Appellant

v.

FRANK GILLIS, Superintendent,
WILLIAM WARD, Pennsylvania Board
of Probation and Parole Chairman

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 4:CV-00-1222)
District Judge:  The Honorable Malcolm Muir

_____

ARGUED JANUARY 23, 2003

BEFORE:  NYGAARD, AMBRO, and LOURIE,[*] <u>Circuit Judges</u>.

(Filed: April 23, 2003)

_____

Dennis E. Boyle, Esq. (Argued)
Nauman, Smith, Shissler & Hall, LLP
200 N. 3rd Street, 18th Floor
Harrisburg, PA 17108-0804
  <u>Counsel for Appellant</u>

John G. Knorr, III, Esq. (Argued)
Chief Deputy Attorney General
Calvin R. Koons, Esq.
Senior Deputy Attorney General

Francis R. Filipi, Esq.
Senior Deputy Attorney General

_____

[*]  Honorable Alan D. Lourie, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

Seth A. Mendelsohn, Esq.
Deputy Attorney General
Office of Attorney General
15th Floor Strawberry Square
Harrisburg, PA 17120
      Counsel for Appellees

---

## OPINION OF THE COURT

---

LOURIE, Circuit Judge.

John Hollawell appeals from the decision of the United States District Court for the Middle District of Pennsylvania denying his petition for a writ of habeas corpus. Hollawell v. Gillis, No. 4:CV-99-1502, slip op. at 5 (M.D. Pa. Nov. 30, 1999) ("Hollawell I"). Because the petition was untimely, we vacate the District Court's order and remand with instructions for the District Court to dismiss the petition. Mr. Hollawell also appeals from a second decision of the same court denying a separate petition for a writ of habeas corpus. Hollawell v. Gillis, No. 4:CV-00-1222, slip op. at 5 (M.D. Pa. Dec. 21, 2000) ("Hollawell II"). Because that decision was in error, we vacate that decision as well.

## BACKGROUND

Hollawell was convicted by a Pennsylvania court for corrupt organizations offenses, bribery, and conspiracy. He was sentenced to serve between six and a half and twenty-three years in a Pennsylvania correctional facility, and he began doing so in 1990. Since his minimum term elapsed, he has been denied parole several times by the Pennsylvania Board of Probation and Parole. He has brought numerous challenges to the Board's actions. Two of those challenges are the bases for the present appeals.

First, Hollawell has alleged that the Parole Board denied him parole on the grounds of his race (white) and comments he made criticizing the Board. More specifically, he has alleged that specific members of the Board made statements to the effect that his race, background, and criticisms of the Board were the reasons that he had not been paroled. Hollawell challenged his denial of parole on those grounds by filing a petition for mandamus in the Commonwealth Court, which rejected his petition in September 1995, Hollawell v. Pa. Bd. of Prob. & Parole, No. 3267 C.D. 1995 (Pa. Commw. Ct. Sept. 25, 1995), and by appealing that rejection to the Pennsylvania Supreme Court, which denied his appeal in June 1996, Pa. Bd. of Prob. & Parole v. Hollawell, Nos. 572, 573 (Pa. June 14, 1996). Thereafter, Hollawell filed a petition for a writ of habeas corpus in the District Court in August 1999. The court denied his petition, finding that his allegations of discrimination and retaliation by the Parole Board were unsupported and that he was denied parole because of "poor institutional adjustment, concern for public safety and unfavorable recommendations from various sources, including the sentencing judge." Hollawell I at 3-4.

Second, Hollawell has challenged the denials of parole as being violative of the Ex Post Facto Clause of the United States Constitution due to a 1996 amendment to 61 Pa. Cons. Stat. § 331.1, the statute governing parole standards. At the time of his conviction, that statute read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and

-4-

activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this Act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

61 Pa. Cons. Stat. § 333.1 (pre-1996).  In 1996, the statute was amended, giving "first and foremost" emphasis to "the safety of the public" and no longer mentioning rehabilitation of the offender:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, the Board shall first and foremost seek to protect the safety of the public.  In addition to this goal, the Board shall address input by crime victims and assist in the fair administration  of justice by ensuring the custody, control, and treatment of paroled offenders.

61 Pa. Cons. Stat. § 333.1 (post-1996).

On July 21, 1999, when Hollawell was denied parole, the Parole Board's rationale tracked the language of the amended statute:  "[T]he mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole."  On December 2, 1999, Hollawell challenged that denial by filing a petition for a writ of mandamus in the Commonwealth Court, arguing that the change in the statute retroactively increased his punishment in violation of the Ex Post Facto Clause.  The Commonwealth Court dismissed the petition for lack of jurisdiction.  Hollawell v. Pa. Bd. of Prob. & Parole, No. 688 M.D. 1999 (Pa. Commw. Ct. Dec. 13, 1999).  Although Hollawell did not appeal that decision to the Pennsylvania Supreme Court, he did file a subsequent petition for a writ of mandamus, invoking the Pennsylvania Supreme Court's

original jurisdiction and seeking the same relief on the Ex Post Facto ground. The Pennsylvania Supreme Court denied the petition without explanation. Hollawell v. Ward, No. 291 M.D. Misc. Dkt. 1999 (Pa. Mar. 27, 2000).[1]

Hollawell next filed a petition for a writ of habeas corpus in the District Court in July 2000. The court adopted sub silentio a magistrate's report and recommendation that Hollawell had exhausted his state court remedies before seeking federal habeas corpus relief. The magistrate found that any appeal by Hollawell of the decision by the Commonwealth Court would have been fruitless because state law apparently did not permit mandamus relief at that time. Hollawell v. Gillis, No. 4:CV-00-1222, slip op. at 12 (Nov. 2, 2000) (Magistrate's Report & Recommendation); see also id. at 10 n.1 (noting that Coady was pending in the Pennsylvania Supreme Court at that time). On the merits, the court applied the Morales test, viz., whether the change to the parole law created "a sufficient risk of increasing the measure of punishment," and determined that the change was not significant. Hollawell II at 4 (citing Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995)). Looking to a related preexisting parole statute, 61 Pa. Cons. Stat. § 331.21, and more specifically its directive to protect the "interests of the Commonwealth" from "injury," the court found that the law had always directed the Parole Board to protect the public safety. Id. at 5-6.

---

[1]     The Pennsylvania Supreme Court subsequently held that it is within the Commonwealth Court's original jurisdiction to decide mandamus petitions raising questions whether Parole Board decisions violate the Ex Post Facto Clause. Coady v. Vaughn, 770 A.2d 287, 290 (Pa. 2001). Thus, the Commonwealth Court's 1999 dismissal of Hollawell's petition for lack of jurisdiction would have been erroneous had it occurred after Coady.

Hollawell separately appealed both decisions of the District Court. We have jurisdiction under 28 U.S.C. § 1291. We heard oral arguments for both appeals together and set forth our decisions for each in this single opinion.

DISCUSSION

A. Appeal No. 99-3996 (Discrimination and Retaliation)

In reviewing a district court's decision on a habeas corpus petition, we review the court's legal conclusions de novo and any factual findings for clear error. Ruggiano v. Reish, 307 F.3d 121, 126 (3d Cir. 2002) (citing Rios v. Wiley, 201 F.3d 257, 262 (3d Cir. 2000)). We also review decisions regarding the timeliness of a habeas corpus petition de novo. Johnson v. Hendricks, 314 F.3d 159, 161 (3d Cir. 2002) (citing Nara v. Frank, 264 F.3d 310, 314 (3d Cir. 2001)).

Hollawell first argues that he exhausted his state court remedies by filing a mandamus petition challenging the denial of parole on discrimination and retaliation grounds. He specifically points to an adverse decision by the Commonwealth Court in September 1995 and an adverse decision on the appeal of that decision by the Pennsylvania Supreme Court in June 1996. On the merits, he argues that he has presented sufficiently detailed allegations of statements to the effect that the decisions denying parole were the product of discrimination and retaliation so as to raise factual issues that merit discovery and a hearing.

The Commonwealth responds that Hollawell's discrimination and retaliation-based habeas corpus actions, commenced in 1999, were well past the one-year statute of limitations, which began at the time of the final adverse state court decision in 1996.

Alternatively, the Commonwealth contends that Hollawell did not exhaust his state remedies by seeking relief from the state courts within the year preceding his federal action. On the merits, the Commonwealth contends that Hollawell's allegations were insufficient to justify relief, and that the Parole Board's stated reasons for denying him parole were sound and belie his claims of discrimination and retaliation.

We agree with the Commonwealth that Hollawell's habeas corpus action in the District Court was time-barred. The one-year limitations period is set by statute:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . . .

28 U.S.C. § 2244(d)(1). Hollawell's brief unequivocally asserts that the relevant state court decisions occurred in 1995 and 1996. That fact was confirmed by Hollawell's counsel during oral argument.[2] That being the case, Hollawell's 1999 federal habeas corpus petition was filed more than three years after the final state court decision and is therefore clearly time-barred. Accordingly, the District Court erred in not dismissing the petition; we therefore vacate the court's denial of Hollawell's petition in Hollawell I and remand for the court to enter a dismissal with prejudice. See, e.g., Johnson, 314 F.3d at 163 (affirming a dismissal of a habeas corpus petition as time-barred under § 2244(d)(1)); Robinson v. Johnson, 313 F.3d 128, 143 (3d Cir. 2002) (same).

---

[2]     Hollawell has filed a flurry of state and federal petitions, raising some uncertainty concerning which federal actions relate to which state actions. However, we believe the record and assertions of counsel at oral argument make clear that the federal petition involved in this appeal relates to the state petitions decided in 1995 and 1996.

B.  Appeal No. 01-1063 (Ex Post Facto Violation)

Because "the determination of whether state remedies have been exhausted and whether exhaustion should be excused involves the application and interpretation of legal precepts," we review issues of exhaustion de novo.  Hankins v. Fulcomer, 941 F.2d 246, 249 (3d Cir. 1991) (citing Schandelmeier v. Cunningham, 819 F.2d 52, 54 (3d Cir. 1986); Sullivan v. Cuyler, 723 F.2d 1077, 1082 (3d Cir. 1983)).  Because the determination whether a change in law violates the Ex Post Facto Clause is a quintessentially legal question, we also review that issue de novo.  See Ruggiano, 307 F.3d at 126.

1.  Exhaustion of State Remedies

Hollawell preemptively argues that he properly exhausted the state remedies available to him before filing for habeas corpus relief in federal court.  He argues that he filed petitions for mandamus in both the Commonwealth Court and the Pennsylvania Supreme Court, but that his petitions were denied under the then-existing (pre-Coady) law. The Commonwealth responds that Hollawell was required to appeal the Commonwealth Court's denial to the Pennsylvania Supreme Court, rather than merely file a separate mandamus petition in the Supreme Court.

We agree with Hollawell that the exhaustion requirement poses no obstacle to our rendering a decision on the merits in this case.  The exhaustion requirement, codified at 28 U.S.C. § 2254(b), is grounded in comity and affords states a full opportunity to correct constitutional violations before the federal courts consider the issues.  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).  A habeas petitioner gives the state courts a full opportunity to address his case by attempting to appeal through the chain of appeals to the

state's highest court.  Id. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

In this case, Hollawell has apparently technically not complied with the requirement to present his Ex Post Facto case through the state court system's chain of appeals.  Rather than appeal the Commonwealth Court's decision to the Pennsylvania Supreme Court, he filed a new petition in the Pennsylvania Supreme Court seeking a decision in the first instance.  Notwithstanding that failure to appeal, we conclude that Hollawell has satisfied the exhaustion requirement.  First, Hollawell filed both state mandamus petitions as a pro se litigant, and we are somewhat forgiving of the shortcomings of pro se litigants concerning such technical matters as the distinction between appellate review of a lower court's decision and invoking the original jurisdiction of an appellate court.  Second, Hollawell did obtain a decision from the Commonwealth's highest court, and it is quite possible that the Pennsylvania Supreme Court, obviously aware of the lower court's decision, treated his pro se petition as being equivalent to an appeal.  In any event, it acted upon and denied that petition.  Third, the state law at the time arguably did not permit the mandamus relief Hollawell was seeking, thus bringing him within an exception to the exhaustion requirement.  See 28 U.S.C. § 2254(b)(1)(B).  Thus, we consider that the appeal is properly before us.

2. Ex Post Facto Violation:  Merits

In his original briefs and oral argument, Hollawell has argued that the change in the statute altered the factors to be considered by the Parole Board and thus constituted a more

-10-

serious statutory change than those previously upheld as nonviolative of the Constitution. According to Hollawell, the old statute gave primary importance to the rehabilitation of the offender, while the amended statute introduced a new condition — "protection of the safety of the public" — and further made that new condition the paramount one. Hollawell contends that the new condition is truly new and not merely a restatement of 61 Pa. Cons. Stat. § 331.21, which directed the Parole Board to protect the "interests of the Commonwealth." Finally, Hollawell contends that parole release rates have decreased significantly since the change in the law, indicating that the change has increased the penalties for criminal violations.

In its original briefs and oral argument, the Commonwealth has responded that parole decisions have always been at the discretion of the Parole Board and that the amendment therefore did not amount to a "law" for Ex Post Facto purposes. The Commonwealth also contends that, even before the amendment, the Parole Board was obliged to consider public safety under the "interests of the Commonwealth" prong of § 331.21. Finally, the Commonwealth disputes the accuracy and significance of Hollawell's empirical data concerning parole rates.

After oral argument in this case, this court issued a decision in Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2003), holding that the statutory change did constitute an Ex Post Facto violation with respect to an individual already sentenced. At our direction, the parties submitted supplemental briefs addressing the impact of Mickens-Thomas on this case. Hollawell's supplemental brief contends that Mickens-Thomas confronted the identical issue presented in this case, and squarely rejected the same arguments that the

Commonwealth now advances. According to Hollawell, he should receive a new parole hearing applying the pre-amendment standards, just as Thomas received. The Commonwealth's supplemental brief makes three contentions. First, Mickens-Thomas does not reach the exhaustion issue present in this case. Second, the decision in Mickens-Thomas rests upon an extensive factual record that is not present in this case. Third, according to the Commonwealth, Mickens-Thomas was incorrectly decided and should be reconsidered.

The Constitution forbids Congress and the states from enacting Ex Post Facto laws. U.S. Const. art. I, § 9, cl. 3, § 10, cl. 1. The relevant Ex Post Facto Clause reads as follows: "No State shall . . . pass any . . . ex post facto Law . . . ." Id., § 10, cl. 1. The Supreme Court of the United States has interpreted that clause to prohibit "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." Morales, 514 U.S. at 504 (quotations omitted).

As an initial matter, we agree with Hollawell that 61 Pa. Cons. Stat. § 331.1 constitutes a "law" for Ex Post Facto purposes. It is legislation that clearly directs which factors the Parole Board must consider in exercising its discretion to grant or deny parole. Although one does not have a constitutional right to parole, and a decision to grant or deny parole to a Pennsylvania inmate is a discretionary one that is not subject to direct judicial review, Coady, 770 A.2d at 289, a parole decision can be collaterally attacked on constitutional grounds, including the Ex Post Facto Clause. Indeed, the Supreme Court has recently considered two appeals concerning when a retroactive change in parole rules violates the Ex Post Facto Clause. In Morales, the Court upheld a California law that

authorized its Parole Board, after the first parole hearing, to hold following parole hearings in two or three years rather than one year, provided that the Board found that the prisoner would not reasonably be expected to be suitable for parole in the next year or two, respectively. 514 U.S. at 507. In Garner v. Jones, the Court upheld a similar Georgia law that allowed the Parole Board to increase the interval between hearings from a maximum of three years to eight years. 529 U.S. 244, 247 (2000). Thus, changes in the law that effectively extend the time before parole rehearings can occur do not necessarily violate the Ex Post Facto Clause.

The test set out in Morales for determining whether a parole law amendment violates the Ex Post Facto Clause involves a two-step inquiry. First, the court must determine "[w]hether [the amendment] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Morales, 514 U.S. at 509. If not, then the amendment may nonetheless still violate the Ex Post Facto Clause if the challenger "demonstrate[s], by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." Garner, 529 U.S. at 255.

Regarding the first inquiry, the Court in both Morales and Garner took care to expressly distinguish the amendment before it — amendments relating to the timing of an offender's parole hearings — from an amendment relating to "the standards for . . . determining his suitability for parole." Morales, 514 U.S. at 507; Garner, 529 U.S. at 250. This case presents a question of that latter type, viz., whether retroactive application of a parole statute amendment expressing for the first time that "the board shall first and

foremost seek to protect the safety of the public" violates the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause.

In <u>Mickens-Thomas</u>, this court answered the question affirmatively. Thomas had been serving a life sentence, without the possibility of parole, for the rape and murder of a twelve-year-old girl in 1964. 321 F.3d at 376. Governor Casey commuted the life sentences of Thomas and 26 others, thereby rendering them eligible to apply for parole. <u>Id.</u> at 377. Thomas applied for parole three times between 1996 and 2000. <u>Id.</u> at 380-83. Despite release recommendations from Department of Corrections staff, Thomas's participation in counseling and therapy, and favorable psychiatric evaluations, the Board denied his application each time, referring in the first two denials to Thomas's "assaultive instant offense" and "very high assaultive behavior potential," <u>id.</u> at 381-82, and stating in the final denial that "the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole," <u>id.</u> at 382. Of all the prisoners who had had their life sentences commuted by then-Governor Casey, Thomas was the only one not released on parole. <u>Id.</u> at 385.

The court in <u>Mickens-Thomas</u> held that Pennsylvania's change to the parole statute altered the manner in which the Parole Board weighed public safety in making parole decisions:

> The record is convincing that after 1996, the Board applied to the public safety interest far greater weight. The evidence here demonstrates that since 1996, the Board has given special weight to the risk to public safety. Pre-1996, a prisoner could be denied parole because of public safety concerns only if those concerns together with other relevant factors outweighed, by a preponderance, the liberty interests of the inmate. The 1996 policy change placed first and foremost the public safety to the disadvantage of the remaining liberty interest of the prisoner.

-14-

Id. The court described the statistical evidence as "staggering," noting that in 266 historical instances of commuted life sentences, Thomas was the only one not granted parole within his first two attempts. Id. The court accordingly ordered that Thomas's parole application be remanded to the Parole Board for review under the pre-1996 rules. Id. at 393.

We are aware of the recent decision of the Pennsylvania Supreme Court considering whether the statutory amendment violates the Ex Post Facto Clause: Winklespecht v. Pa. Bd. of Prob. & Parole, 813 A.2d 688, 692 (Pa. 2002). The Court there held that the Pennsylvania amendment was merely a new expression of a standard that had previously been inherent in the law. However, Mickens-Thomas is a precedent of this court, binding unless overruled en banc or by the Supreme Court of the United States, and the Commonwealth's arguments attempting to distinguish Mickens-Thomas are not convincing. First, as explained above, we do not accept the Commonwealth's contention that we need not reach the merits of Hollawell's Ex Post Facto claim because he has not exhausted his state remedies. Second, the Commonwealth's contention that the Mickens-Thomas decision is predicated on a factual record not developed in this case, although true, does not have the effect that the Commonwealth urges. Mickens-Thomas clearly holds as a legal matter that the Pennsylvania statutory change violates the Ex Post Facto Clause. Moreover, to the extent that that holding is premised on factual evidence of the amendment's practical effect, Hollawell might rely on that same evidence and achieve the same result if we were to needlessly remand this case for factual development in the District Court. Third, and finally, this panel of the court cannot, as the Commonwealth would like, overrule Mickens-Thomas even if we might disagree with it. It is binding precedent that we must follow.

Accordingly, we vacate the decision of the District Court in <u>Hollawell II</u> and, as the <u>Mickens-Thomas</u> panel did, 321 F.3d at 393, remand for the District Court to order the Pennsylvania Board of Probation and Parole to re-adjudicate Hollawell's parole application applying the pre-1996 statute and corresponding rules.

TO THE CLERK:

Please file the foregoing opinion.

/s/Alan D. Lourie
Circuit Judge