770 A.2d 287

**Joseph COADY, Appellee,**

**v.**

**Donald T. VAUGHN, the District Attorney of the County of Montgomery, and the Attorney General of the State of Pennsylvania, Appellants.**

Supreme Court of Pennsylvania.

Submitted March 14, 2000.

Decided March 22, 2001.

Kiersten Murray, Atty. Gen. Office, Philadelphia, for Vaughn, et al.

Nancy Winkelman, Schnader, Harrison, Segal & Lewis, Philadelphia, for Coady.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.

*OPINION OF THE COURT*

FLAHERTY, Chief Justice.

This court granted certification of questions of law from the United States Court of Appeals for the Third Circuit to address the issues of whether a person who has been denied parole may obtain review from a Pennsylvania state court of a claim that the denial of parole violated the *ex post facto* clause of the United States Constitution, and, if so, what is the proper method for review.

▮ Appellee was convicted of rape and indecent assault in the Court of Common Pleas of Montgomery County and, on June 14, 1990, was sentenced to six to twelve years imprisonment. Following the expiration of appellee's minimum sentence in 1996, the Pennsylvania Board of Probation and Parole (board) denied parole. The following year, appellee was again eligible for parole but was denied relief. On December 11, 1997, appellee filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania challenging the denial of his parole and seeking immediate release from prison. The petition alleged that between the time of appellee's offense and the time his parole was reviewed, changes in the criteria for granting parole[1] in this commonwealth violated the *ex post facto* clause of the federal constitution.[2] Following the district court's dismissal

1. These changes consisted of: (1) *Ex post facto* violation based on the application of Pennsylvania's 1996 parole statute to appellee's June 1997 parole review; (2) *Ex post facto* violation based on Pennsylvania's agreement with the federal government to receive increased funding in exchange for releasing fewer prisoners at the expiration of their minimum sentences, pursuant to the Violent Offenders Incarceration and Truth In Sentencing Act; (3) *Ex post facto* violation based on the application of amended guidelines, which required the affirmative vote of three of five parole board members; and (4) the arbitrary and capricious denial of parole, in denial of due process of law.

2. A state law violates the *ex post facto* clause if it was adopted after the complaining party committed the criminal acts and "inflicts a greater punishment than the law annexed to the crime, when committed."

of the petition, appellee appealed to the U.S. court of appeals for the third circuit. The court, after hearing oral argument, declined to reach the merits of appellee's claim on the grounds that the *ex post facto* claim had not been presented to a state court. Accordingly, the court of appeals petitioned this court for certification, which we granted on December 13, 1999.

◼ Direct appeal of the denial of parole is precluded by *Rogers v. Com. Bd. of Probation and Parole*, 555 Pa. 285, 724 A.2d 319 (1999), which held that due to its discretionary nature, the decision to deny parole is not an adjudication subject to appeal under the Administrative Agency Law[3] and does not implicate any constitutionally protected interest. However, the *Rogers* decision noted that "[w]hile appellants are not entitled to appellate review of a Parole Board decision, they may be entitled to pursue allegations of constitutional violations against the Parole Board through a writ of mandamus. . . ." 724 A.2d at 323, n. 5. *Rogers*, then, leaves open the possibility that a writ of mandamus is the appropriate avenue for presenting an *ex post facto* constitutional challenge to the denial of parole.

◼ A proceeding in mandamus is an extraordinary action at common law, designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy. *Bronson v. Com. Bd. of Probation and Parole*, 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied*, 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981).

It is undisputed that appellee does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same. However, the Commonwealth argues that a proceeding in mandamus is available to compel the board to correct a mistake in applying the law. *Bronson, supra.*

*California Dept. of Corrections v. Morales*, 514 U.S. 499, 504–06, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588, 593–94, 596–97 (1995).

3.  2 Pa.C.S. § 101.

■ As this court has noted, "the General Assembly, in its wisdom, has conferred upon the Parole Board sole discretion to determine whether a prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside the confines of prison." *Rogers*, 724 A.2d at 322. The threshold question to be addressed is whether the parole board improperly applied a new law that increased the appellee's penalty. This determination of whether the *ex post facto* right has been violated will necessarily involve an examination of the law that was applied in the denial of appellee's parole versus the law in effect at the time appellee was incarcerated. In keeping with the rationale of *Rogers*, that parole denials are not adjudications, and the fact that the granting of parole is wholly discretionary, parole denial claims are not normally suited to review by way of mandamus.

■ Mandamus will not lie to compel a purely discretionary act. *County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402 (1985). In *Pa. Dental Ass'n v. Com. Ins. Dept.*, 512 Pa. 217, 516 A.2d 647, 652 (1986), this court further explained the nature of mandamus by stating:

> [This standard] has usually been interpreted to mean that while a court may direct that discretion be exercised, it may not specify *how* that discretion is to be exercised nor require the performance of a particular discretionary act. . . . In short, mandamus is chiefly employed to compel the performance (when refused) of a ministerial duty, or to compel action (when refused) in matters involving judgment or discretion. It is not used to direct the exercise of judgment or discretion in a particular way, nor to direct the retraction or reversal of an action already taken.

■ Thus, mandamus will not lie where the substance of the board's discretionary action is the subject of the challenge. Where, however, discretionary actions and criteria are not being contested but rather the actions of the board taken pursuant to changed statutory requirements are being challenged, an action for mandamus remains viable as a means for examining whether statutory requirements have been altered

in a manner that violates the *ex post facto* clause. Such an action could be brought in the original jurisdiction of the Commonwealth Court.[4] Absent a change in the statutes governing parole, however, denial of parole would generally constitute a discretionary matter that is not subject to review. *See Rogers, supra.*

Accordingly, having answered the questions certified for review, we refer this matter back to the United States Court of Appeals for the Third Circuit.

CASTILLE, J., files a concurring opinion in which NEWMAN, J., joins.

NIGRO, J., files a dissenting opinion.

CASTILLE, Justice, Concurring.

I join the majority opinion, however, I write separately to address another potential avenue of review, also not clearly foreclosed under Pennsylvania law, for a claim that a denial of parole resulting from an alleged change in parole guidelines violated the *ex post facto* clause of the United States Constitution. In my view, such a constitutional claim arising in connection with a prisoner's continued confinement may be cognizable under Pennsylvania's habeas corpus statute. *See* 42 Pa.C.S. § 6501 *et seq.*[1] The parties, unfortunately, have not argued the potential applicability of the habeas corpus

---

4. 42 Pa.C.S. § 761(a)(1).

1. In particular, § 6501 provides that "[t]he privilege of the writ of habeas corpus shall not be suspended, unless when in the case of rebellion or invasion the public safety may require it." Section 6502(a), governing the power to issue the writ, states that "[a]ny judge of a court of record may issue the writ of habeas corpus to inquire into the cause of detention of any person or for any lawful purpose." Section 6503, governing the right to apply for the writ, provides:

(a) Except as provided in subsection (b), an application for habeas corpus to inquire into the cause of detention may be brought by or on behalf of any person restrained of his liberty within this Commonwealth under any pretense whatsoever.

(b) Where a person is restrained by virtue of sentence after conviction for a criminal offense, the writ of habeas corpus shall not be available if a remedy may be had by post-conviction hearing proceedings authorized by law.

statute, which no doubt explains the majority's exclusive focus on mandamus. Nevertheless, since the Third Circuit's query concerns *any* manner in which state court review of the constitutional claim may be had, some comment on the potential availability of review under the state habeas corpus statute is appropriate.

Preliminarily, I would note that this Court's recent decision in *Rogers v. Pennsylvania Bd. of Probation and Parole,* 555 Pa. 285, 724 A.2d 319 (1999), does not foreclose the availability of state habeas corpus review here. In *Rogers,* the appellants averred that they were entitled to *appellate* review of denials of parole by the Parole Board that they claimed were "arbitrary and capricious." *Id.* at 321. This Court held that an administrative parole denial does not constitute an "adjudication" subject to statutory appellate review under the Administrative Agency Law.[2] The *Rogers* Court noted that this was so because the statutory definition of adjudication "clearly and unambiguously provides that parole decisions are not ones which are subject to appellate review by courts." 724 A.2d at 321 (citing 2 Pa.C.S. § 101). The Court also rejected a claim, made there, that there was a constitutional right to appeal the Parole Board's actions under the federal Due Process Clause. We rejected the constitutional right of appeal claim because a denial of parole does not implicate a constitutionally protected liberty interest. 724 A.2d at 322–23.

The *Rogers* Court's holding that there was no right to direct *appellate* review of the Parole Board's administrative denial of parole does not foreclose the possibility that certain constitutional claims might be cognizable, as *original* actions in Common Pleas Court under the state habeas corpus statute. *See* 42 Pa.C.S. § 6502(a). Indeed, there was no issue in *Rogers* concerning the availability of state habeas corpus review. Moreover, this Court's recognition in *Rogers* of the potential availability of mandamus indicates that the decision did not purport to foreclose all review of discrete constitutional claims that might arise from parole denials.

2. *See* 2 Pa.C.S. § 101 (defining adjudication); *id.* § 702 (outlining right to appeal adjudication of Commonwealth agency).

In addition to the fact that *Rogers* does not foreclose state habeas corpus review, Pennsylvania's statutes, other decisions from this Court, and the very nature of habeas corpus review suggest that the type of constitutional claim raised by appellee may properly be pursued under 42 Pa.C.S. § 6501 *et seq.* Because the practical effect of a parole denial is the continuation of the prisoner's incarceration, a petition for a writ of habeas corpus would seem to be the logical and appropriate manner to raise a viable constitutional claim stemming from the Parole Board's decision.[3] In *Commonwealth v. Isabell,* 503 Pa. 2, 467 A.2d 1287 (1983), this Court recognized as much. In *Isabell,* the appellant claimed that the Bureau of Corrections erroneously interpreted his sentences to run consecutively. In suggesting that the proper avenue to litigate such a claim was via a state writ of habeas corpus, this Court noted that habeas corpus is a "well known remedy for deliverance from illegal confinement [and] is particularly suited to the wrong alleged[:] illegal detention resulting from an incorrect computation of appellant's sentence by prison officials." *Id.* at 10, 467 A.2d at 1291. State habeas corpus relief seems no less suited to a prisoner who seeks deliverance from illegal confinement resulting from an alleged unconstitutional denial of parole.

That state habeas corpus review is not clearly foreclosed as to such claims is corroborated by a review of the Post Conviction Relief Act (PCRA) and its predecessor, the Post Conviction Hearing Act (PCHA), as well as our cases construing these statutes. In *Isabell,* this Court held that since the challenge to the action of the Bureau of Corrections was "not a

---

**3.** I would be careful to distinguish legitimate constitutional claims from the garden-variety abuse of discretion complaints that would attend direct *appeals* that the Administrative Agency Law strictly prohibits. The Parole Board has exclusive power to grant or deny parole and, in reaching its discretionary decision, must consider and balance a variety of factors. *See* 61 Pa.C.S. §§ 331.17–331.19; *see also Rogers,* 724 A.2d at 321. It is not the sort of determination that lends itself to effective appellate review. Where a decision—or, as here, a decision preordained by an alleged "fundamental change" in parole "criterion" (Petition for Certification, 2)—goes beyond discretion and implicates a fundamental constitutional right relating to detention, state habeas corpus review may be appropriate.

direct or collateral attack on the conviction or sentence imposed by the trial court," it was not properly brought under the PCHA and, consequently, the prisoner could "resort to the writ of habeas corpus ad subjiciendum." *Id.* More recently, in two capital cases decided under the PCRA, *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638 (1998) and *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999), we affirmed that the statutory writ continues to exist as a separate remedy in appropriate circumstances.

In *Peterkin*, the death-sentenced prisoner filed a second PCRA petition, which he also captioned as a request for habeas corpus relief, almost ten years after the final judgment in his case. The PCRA court denied the petition as premature due to pending federal litigation. *Peterkin,* 722 A.2d at 639. On Peterkin's appeal, the Commonwealth asserted that the PCRA court should be affirmed on other, more fundamental grounds, *i.e.,* because it had no jurisdiction to hear the petition since it was not timely filed under the 1995 amendments to the PCRA. Peterkin, on the other hand, asserted that his request for statutory habeas corpus relief was constitutionally guaranteed and could not be suspended by the PCRA; that the legislature lacked the constitutional power to limit the availability of habeas corpus; and that by leaving the habeas corpus statute in place, the legislature acknowledged that habeas corpus cannot be abrogated by the PCRA. This Court held that "the PCRA subsumes the remedy of habeas corpus with respect to remedies offered under the PCRA." Thus, while acknowledging that "the legislature intended that the writ would continue to exist as a separate remedy," this Court recognized that "the writ continues to exist only in cases in which there is no remedy under the PCRA." The Court noted that the state habeas corpus statute itself provides that explicit limitation. *See* 42 Pa.C.S. § 6503(b) ("Where a person is restrained by virtue of sentence after conviction for a criminal offense, the writ of habeas corpus shall not be available if a remedy may be had by post-conviction hearing proceedings.") The Court then turned to the question of whether Peterkin, in fact, had had a remedy under the PCRA;

finding that his claims were cognizable under the PCRA's statutory framework, we then held that statutory habeas corpus review was not available. *Peterkin*, 722 A.2d at 639–41.

In *Chester*, the appellant alleged that the PCRA court erred in finding that the PCRA bars review of claims arising from the penalty phase of a capital case. 733 A.2d at 1248. Alternatively, appellant asked that, if this Court were to find that the PCRA does preclude review of penalty phase questions, then those issues should be considered as if he had applied for habeas corpus relief. This Court concluded that a penalty phase hearing in a capital case is a "truth-determining process" and thus found Chester's penalty phase claims cognizable under the PCRA. Accordingly, the Court noted that "we need not address those claims separately as requests for habeas relief," citing *Peterkin* for the proposition that habeas corpus review is permissible only in those circumstances where relief is not possible under the PCRA. *Id.* at 1248–50.

The rule that emerges from *Isabell, Peterkin* and *Chester* is that the state habeas corpus statute is alive and well and that the PCRA subsumes the statutory writ only to the extent that the underlying claim could have been brought under the PCRA. The question here, then, is whether a claim that an administrative parole denial violated the *ex post facto* clause of the United States Constitution is cognizable under the PCRA. The plain language of the PCRA proves that it is not.

PCRA review is limited to persons who assert that they were convicted of crimes they did not commit and persons who are serving illegal sentences. *See* 42 Pa.C.S. § 9542. In addition, the specifically enumerated, substantive claims deemed reviewable under the PCRA all have to do with matters affecting "the conviction and sentence." *Id.* § 9543(a)(2). A claim of unjust incarceration because of an unconstitutional, *administrative* denial of parole does not attack the propriety of the underlying conviction *or* the legality of the sentence the court imposed. Instead, it challenges an action by the Parole Board. Because such a claim is not subsumed within the PCRA, consistently with *Isabell* and

*Peterkin*, it theoretically can be raised as an original action in the Court of Common Pleas under the state habeas corpus statute.[4]

Thus, Pennsylvania's statutes, as well as our precedents, seem to suggest that a prisoner may be able to obtain state court review of a constitutional claim that the denial of parole violated the *ex post facto* clause. Indeed, the Third Circuit itself has suggested as much. *See Burkett v. Love*, 89 F.3d 135, 141–42 (3rd Cir.1996) ("We read *Isabell* . . . as permitting a petition for habeas corpus relief in the circumstances here [petitioner had alleged that parole was denied in vindictive retaliation for his success in earlier federal habeas actions] because Burkett is not making a direct or collateral attack on his conviction.")

The matter is not so simple, however. As the Third Circuit noted in its certification petition here, Pennsylvania law on this point is not entirely settled. One year after *Burkett*, but before *Peterkin*, our Commonwealth Court ruled that habeas corpus was not a valid means of challenging an adverse Parole Board decision. *See Weaver v. Pennsylvania Bd. of Probation and Parole*, 688 A.2d 766 (Commw.Ct.1997). Weaver, a convicted rapist, alleged that the Parole Board violated his Fifth Amendment right not to incriminate himself by denying him parole solely because he had not participated in the Institutional Sex Offenders Program, a program which would have required him to admit to his crime. *Id.* at 768–69. Ruling on the habeas corpus challenge it deemed implied in Weaver's petition, the Commonwealth Court declined to follow the Third Circuit's analysis in *Burkett*. *Id.* at 775 n. 17. A habeas corpus proceeding, the Commonwealth Court reasoned, challenges only the legality of a sentence or the condi-

4. There is an additional practical reason such claims are unavailable under the PCRA. The PCRA provides that, absent certain limited exceptions, all petitions shall be filed within one year of the date the judgment becomes final. 42 Pa.C.S. § 9545(b)(1). Though it is possible that a very limited number of parole denial claims could be brought within that one year, almost all of these claims simply will not accrue until long after the expiration of this deadline, further suggesting that these sorts of actions do not come within the ambit of the PCRA.

tions of a prisoner's confinement and, thus, is not available to a prisoner contending that the Parole Board erred in denying him or her parole, irrespective of the specific nature of the prisoner's contentions. *Id.* The court continued:

Here, Weaver is not challenging the state's right to confine him or the length of his confinement. Rather, he is challenging only the constitutionality of the Board's procedures and the factors considered by the Board in denying him parole. Such a challenge cannot properly be raised in a habeas corpus proceeding.

*Id.*

The Commonwealth Court's analysis in *Weaver* is problematic to say the least. First of all, neither the habeas corpus statute, which the Commonwealth Court did not cite, nor Pa.R.Crim.P. 1701, which it did cite, restrict the statutory writ of habeas corpus to challenges to "the *legality* of a sentence." Instead, both provisions are more broadly written. *See* 42 Pa.C.S. § 6503(a) (application may "inquire into the cause of *detention* ") (emphasis added); Pa.R.Crim.P. 1701 (referring to a challenge to the "legality of the petitioner's *detention* or *confinement* ") (emphasis added). Furthermore, our cases, including *Isabell* and *Peterkin,* call into question the conclusion in *Weaver.*

It seems to me that there is a very strong argument that state habeas corpus review of the constitutional claim at issue here is not clearly foreclosed under this Court's jurisprudence and the clear statutory construct outlined above. Nevertheless, without intending any disrespect to the Third Circuit, which graciously sought this Court's guidance in this matter, I am loath to offer this as a definitive answer to the certification petition because of the briefing posture of this case. Neither party has discussed the availability of state habeas corpus review, notwithstanding that the Third Circuit certification petition discussed both *Burkett* and *Weaver.* It may be that these were considered, tactical decisions by the parties. Whatever may be the reason, the Court is faced with an absence of adversarial presentations on the question. I do not indulge the conceit that, without adversarial presentations, it

is possible to discern any and all arguments that may be made against the availability of state habeas corpus review. There may very well be more to be said on the matter.[5] I would not foreclose that option, but would await an actual case or controversy, with adversarial presentations, to definitively resolve the question.

NEWMAN, J., joins this concurring opinion.

NIGRO, Justice, Dissenting.

Since I believe that a person seeking parole is entitled to limited appellate review of a Board order denying parole, as explained in my dissenting opinion in *Rogers v. Pennsylvania Bd. of Probation and Parole*, 555 Pa. 285, 724 A.2d 319 (1999), I must respectfully dissent.

**5.** One concern that comes immediately to mind is that state trial judges would be overloaded with habeas corpus petitions attempting to challenge garden-variety denials of parole. If that were so, state habeas corpus review could turn into an end-around the Administrative Agency Law and our decision in *Rogers*. Having identified these concerns, I am nevertheless confident that our trial judges would have no difficulty in separating the constitutional wheat from the discretionary review chaff in state habeas corpus proceedings.