

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-2004

# Nolan v. Gillis

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3423

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Nolan v. Gillis" (2004). *2004 Decisions.* Paper 698.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/698

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3423
_____

CLAUDE NOLAN, JR.,
*Appellant*

v.

FRANK D. GILLIS;
NORTHAMPTON DISTRICT ATTORNEYS OFFICE;
ATTORNEY GENERAL

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4:CV-02-0315)
District Judge:  Honorable Malcolm Muir

_____

Submitted Under Third Circuit LAR 34.1(a)
May 7, 2004

Before:  SLOVITER and FUENTES, *Circuit Judges*, and POLLAK, *District Judge**

(Filed: May 18, 2004)

_____

**OPINION OF THE COURT**
_____

POLLAK, *District Judge*.

---

* The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Claude Nolan, Jr. is serving consecutive sentences totaling 12½ to 25 years at SCI-Coal Township in Northumberland County, Pennsylvania, pursuant to his convictions in 1984 and 1985 for voluntary manslaughter, aggravated assault, carrying a firearm, and possessing an instrument of a crime. Three months before Mr. Nolan became eligible for parole, the Pennsylvania Board of Probation and Parole ("Board"), after a hearing, issued a one-page written opinion denying parole. After exhausting his state remedies, Mr. Nolan filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, contending that the Board's decision violated the Ex Post Facto Clause of the Constitution in two respects: (1) by applying to him a 1996 amendment to Pennsylvania's parole statute, 61 P.S. § 331.1, enacted more than a decade after his incarceration; and (2) by failing to apply an automatic parole policy allegedly in place at the time of his incarceration. The District Court denied the petition, finding no *ex post facto* violation.

Subsequently, this court decided *Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003) ("*Mickens-Thomas I*"), ruling that the 1996 amendment to 61 P.S. § 331.1, which for the first time identified public safety as the principal concern in parole decisions, violated the Ex Post Facto Clause when applied retroactively. In light of this decision, we granted Mr. Nolan's request for a certificate of appealability on his *ex post facto* claims. Because our holding in *Mickens-Thomas I* undermines the rationale behind the District Court's order, we vacate the order and remand for the District Court's reconsideration in light of our decision in *Mickens-Thomas I*.

2

## I.

Because we write solely for the parties and the District Court, we limit our discussion of the background facts to those relevant to the issues on appeal. On June 22, 1984, Mr. Nolan was sentenced in the Philadelphia Court of Common Pleas to a prison term of five to ten years for aggravated assault and carrying a firearm. On October 15, 1985, he was sentenced to a consecutive term of seven-and-a-half to fifteen years for voluntary manslaughter and possessing an instrument of a crime. He has always maintained his innocence of the offenses for which he was convicted.

Mr. Nolan became eligible for parole on December 26, 2000.[1] In advance of this date, the Pennsylvania Department of Corrections recommended against granting him parole based on "a number of factors, not the least of which is whether or not an inmate takes responsibility for his/her crime." Joint Appendix ("J.A.") at 120a. On September 26, 2000, the Board, after a hearing, issued a one-page written opinion denying Mr. Nolan's application on the basis that "the fair administration of justice cannot be achieved through your release on parole." *Id.* at 121a. The Board subsequently denied Mr. Nolan's request for administrative relief.[2]

---

[1] In custody since June 1983, Mr. Nolan would have been eligible for parole on December 26, 1995. While in prison, he was sentenced to sixty additional months, or five years, for what Mr. Nolan describes in his opening brief on appeal as "parole violations."

[2] The Board also denied Mr. Nolan's renewed application for parole the following year, on October 1, 2001. The 2001 denial, communicated to Mr. Nolan in a letter virtually identical to the letter reporting the 2000 denial, is not at issue in this appeal.

Mr. Nolan filed a petition for a writ of mandamus in the Commonwealth Court of Pennsylvania requesting review of the Board's decision on the grounds that it violated, *inter alia*, the Ex Post Facto Clause by (1) applying to him an amendment to Pennsylvania's parole statute, 61 P.S. § 331.1, enacted after his incarceration, and (2) failing to apply a policy or practice in place at the time of his incarceration.[3] This "policy or practice" purportedly provided for automatic parole upon the expiration of an inmate's minimum sentence in the absence of any Class I misconduct citations within the previous nine months. The Commonwealth Court dismissed the petition on November 22, 2000, ruling that the decision whether to grant parole is discretionary and, therefore, not subject to mandamus.[4] Mr. Nolan's petition for allowance of appeal to the Pennsylvania Supreme Court was denied on July 23, 2001.

On September 14, 2001, Mr. Nolan, acting *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania, asserting, *inter alia*, *ex post facto* claims identical to those he raised in the proceedings before the Commonwealth Court and Pennsylvania Supreme Court. The case was transferred to the United States District Court for the Middle

---

[3] In the District Court, Mr. Nolan also alleged a third violation of the Ex Post Facto Clause, along with violations of his due process and equal protection rights. He has not pursued these claims on appeal, and we do not consider them here.

[4] The Pennsylvania Supreme Court has since held that it is within the Commonwealth Court's original jurisdiction to hear mandamus petitions raising questions whether Parole Board decisions violate the Ex Post Facto Clause. *Coady v. Vaughn*, 770 A.2d 287, 290 (Pa. 2001).

District of Pennsylvania ("District Court"), which denied the petition on August 20, 2002.

On April 24, 2003, we granted a certificate of appealability on Mr. Nolan's *ex post facto*

claims.[5]

## II.

We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.  We

review a district court's legal conclusions in a habeas proceeding *de novo* and any factual

findings for clear error.  *See Sierra v. Romaine*, 347 F.3d 559, 564 (3d Cir. 2003).

The Ex Post Facto Clause, U.S. Const. art. 1, § 10, cl. 1, prohibits statutory or

policy changes that "retroactively alter the definition of crimes or increase the punishment

for criminal acts."  *Cal. Dep't of Corrections v. Morales*, 514 U.S. 499, 504 (1995)

(quotations omitted).  A new law or policy violates the Ex Post Facto Clause if it is (1)

retrospective, i.e. applying to events predating its enactment, and (2) disadvantageous to

the offender affected by it.  *Weaver v. Graham*, 450 U.S. 24, 29 (1981).  Retroactive

changes in the rules of parole may violate the prohibition against *ex post facto* laws.

*Garner v. Jones*, 529 U.S. 244, 250 (2000).

## A.

Mr. Nolan contends that the Board violated the Ex Post Facto Clause when, in

---

[5] We also directed the parties to address whether Mr. Nolan's *ex post facto* claims could properly be considered exhausted.  The court and the parties agree that, by raising his *ex post facto* claims with both the Commonwealth Court and the Pennsylvania Supreme Court, Mr. Nolan has exhausted his state remedies.

denying his application for parole in September 2000, it relied upon a 1996 amendment to the Pennsylvania statute governing parole standards, 61 P.S. § 331.1. Entitled "Public Policy as to Parole," 61 P.S. § 331.1 represents the "aspirational introductory provision of the Pennsylvania parole statutes." *Mickens-Thomas I*, 321 F.3d at 377. Since 1996, when the Pennsylvania legislature modified the Commonwealth's parole statute, this introductory provision has instructed that, in making parole decisions, "the board shall first and foremost seek to protect the safety of the public." 61 P.S. § 331.1.[6] From 1941 to 1996 – and thus at the time of Mr. Nolan's convictions in 1984 and 1985 – the parole statute made no specific mention of public safety.[7] Mr. Nolan argues that the Board

---

[6] The complete statute reads as follows:

The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison. In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1.

[7] From 1941 to 1996, the statute provided:

The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment, and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision

6

applied the amended version of 61 P.S. § 331.1 to his parole request, decreasing the likelihood he would be granted parole. The District Court rejected Mr. Nolan's argument. Even assuming that the Board relied upon the amended version of the parole statute, the District Court held that such reliance did not give rise to an *ex post facto* violation, as it did not create a significant risk of increasing the measure of Mr. Nolan's punishment.

Subsequently, on February 21, 2003, we issued our decision in *Mickens-Thomas I*. In that case, an inmate eligible for parole sought federal habeas relief, alleging that the Board's application to him of 61 P.S. § 331.1 as amended in 1996, resulting in the denial of parole, violated the Ex Post Facto Clause. We found that while the Board had always considered the potential risk to public safety in making parole decisions, prior to 1996 the Board was required to make its decision on the totality of the factors pertinent to parole. *Mickens-Thomas I*, 321 F.3d at 386. After 1996, in contrast, the Board, as we put it in *Mickens-Thomas I*, was required to assign "foremost importance to the public safety factor." *Id.* at 384. Therefore, we concluded, the amendment to 61 P.S. § 331.1, by altering the manner in which the Board weighed public safety in making parole decisions, violated the Ex Post Facto Clause when applied retroactively. *Id.* at 393. We instructed the Board to reconsider Mr. Mickens-Thomas's parole application under the parole

---

under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

61 P.S. § 331.1 (pre-1996 version).

7

guidelines in existence prior to 1996. *Id.* When the Board, once again applying factors that violated the Ex Post Facto clause, denied Mr. Mickens-Thomas's application on remand, a determination upheld by the district court, we issued a mandate directing the Board to release Mr. Mickens-Thomas on parole. *Mickens-Thomas v. Vaughn*, 355 F.3d 294, 296 (3d Cir. 2004) ("*Mickens-Thomas II*").

Mr. Nolan's convictions occurred in 1984 and 1985, long before the 1996 amendment of 61 P.S. § 331.1. Consequently, if the Board did in fact rely on the amended parole statute in denying Mr. Nolan's application, *Mickens-Thomas I* dictates that the Board's decision constituted an *ex post facto* violation.

The question that remains is whether the Board in fact applied the pre-1996 version or the post-1996 version of the parole statute in reaching its decision. While the District Court appeared skeptical as to Mr. Nolan's allegation that the Board relied upon the post-1996 statute, stating that the claim was "based on speculation and conjecture," J.A. at 7a, the District Court did not ultimately make a finding on this point. Instead, the District Court explained that "[f]or the purposes of this order, in view of the fact that Nolan is proceeding *pro se*, we will presume that the Board in fact relied upon the amended version of 61 P.S. § 331.1 . . . in refusing to parole him." *Id.* The District Court is in a better position than this court to determine in the first instance whether the Board relied upon the amended version of 61 P.S. § 331.1 in denying Mr. Nolan parole. Accordingly, we will vacate the District Court's decision in light of *Mickens-Thomas I*

8

and remand for the District Court to make the relevant factual determination. If the District Court concludes that the Board did in fact rely on the amended parole statute, it will be appropriate under *Mickens-Thomas I* for the District Court to order the Board to re-adjudicate Mr. Nolan's parole application under the standards articulated in the pre-1996 version of 61 P.S. § 331.1.

**B.**

Mr. Nolan also maintains that the Board violated the Ex Post Facto Clause when it failed to apply a policy or practice that existed at the time of his incarceration – namely, the automatic parole of an inmate upon expiration of his minimum sentence in the absence of any Class I misconduct citations within the previous nine months. The Commonwealth asserts that no such policy has ever existed.[8] The District Court summarily rejected Mr. Nolan's allegation of an "automatic parole" policy, observing that Mr. Nolan had put forth no evidence of other inmates who, despite adverse recommendations from the Department of Corrections, were automatically paroled upon their first application. We agree with the District Court that, based on the record, there is no evidence that such a policy ever existed. Therefore, no *ex post facto* violation can

---

[8] The Commonwealth suggests that Mr. Nolan might have mistakenly interpreted as the Board's parole policy a directive related to the Department of Corrections' work release program. Under Administrative Directive 805, according to the Commonwealth, one requirement of eligibility for work release is that the inmate has had no Class I misconducts, and no more than one Class II misconduct, during the nine months prior to his application.

arise from the Board's failure to apply the alleged policy, and the District Court did not

err in denying Mr. Nolan's *ex post facto* claim on these grounds.

### III.

For the foregoing reasons, we will vacate the order of the District Court and

remand for further proceedings in accordance with this opinion.