**[J-24-2016] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 68 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 1962 MDA 2013 dated 12/ |
| | : | 24/14 vacating and remanding the |
| v. | : | judgment of sentence of the Lancaster |
| | : | County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-36-CR- |
| MATTHEW BRYAN WOLFE, | : | 5791-2012 dated 10/1/13. |
| | : | |
| Appellee | : | ARGUED: November 18, 2015 |
| | : | RESUBMITTED: January 20, 2016 |


**DISSENTING OPINION**


**JUSTICE DOUGHERTY**                                         **DECIDED: June 20, 2016**

I respectfully dissent. Appellee was tried by a jury and found guilty on June 13, 2013; four days later, the United States Supreme Court, overruling decades of prior precedent, announced a new, non-retroactive constitutional rule in *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013). Appellee did not anticipate *Alleyne*: he raised no constitutional challenge to 42 Pa.C.S. §9718, the statute exposing him to a mandatory minimum sentence, demanding that the age-of-victim fact exposing him to the mandatory sentence needed to be charged, presented to his jury, and found beyond a reasonable doubt, which is the extent of *Alleyne*'s constitutional command. Nor did appellee anticipate *Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015): he raised no facial challenge to the statute, arguing that even though he had charging notice of the triggering fact and the fact would go to the jury for determination beyond a reasonable doubt, the statute was infected with a fatal Sixth Amendment flaw. Nor did appellee seek retroactive benefit of *Alleyne*'s new rule post-verdict or on direct appeal to the

Superior Court, and he did not anticipate the rule in *Hopkins* and seek to launch a retroactive facial challenge to the statute post-verdict or on appeal.

Instead, the Superior Court panel raised a retroactive facial constitutional challenge on appellee's behalf, under the guise that appellee's sentence was "illegal." The panel then decided the issue without input from the parties and afforded appellee retroactive relief. This approach allows for indulgence of a pretense that appellee actually launched a timely facial challenge to the statute. When a new constitutional rule applies in a globally retroactive fashion — such as the new rule in *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455 (2012) (barring imposition of mandatory sentences of life without possibility of parole upon juvenile offenders), *deemed retroactive in Montgomery v. Louisiana*, ___ U.S. ___, 136 S.Ct. 718 (2016) — it does not matter that there was no error when a case was tried. *Alleyne* is not a retroactive rule, and neither the trial court here, nor appellee's counsel, did anything wrong.

No doubt I retain a certain perspective when issues implicate the realities of trial practice and judging. Respectfully, I have difficulty upsetting the judgment below without considering the actual trial and litigation of the matter, at the time it was tried, pre-*Alleyne* and pre-*Hopkins*. That focus, in turn, leads me to agree with the substance of Justice Todd's dissenting expression: this particular defendant was afforded all the United States Constitution could be said to mandate at his trial, and even if the trial court could be said to have "erred" in some way, any error was harmless.

Implicit in the Superior Court panel's approach is a conclusion that appellee's able counsel dropped the *Alleyne* ball. However, it is not difficult to imagine why appellee did not anticipate, or later seek to make use of *Alleyne*, much less why he did not anticipate *Hopkins*. Appellee and his counsel knew from the charging document the simple, age-of-the-victim fact triggered exposure to the mandatory minimum. They

knew his jury was going to pass upon that fact pursuant to the beyond a reasonable doubt standard. What they could not know was the future decision in *Alleyne*, its specific contours, and the future interpretation of that decision in *Hopkins*, arising in a post-*Alleyne* prosecution posing a facial challenge to a different statute. Whatever the reason appellee never raised the claim, he has been afforded the retroactive benefit of *Alleyne*'s non-retroactive, new constitutional rule, as implemented by *Hopkins*, on a facial constitutional challenge he never raised.

I have several difficulties with this case. First, assuming a question of the facial constitutionality of a statute, in a case that would apply *Alleyne* to a trial where no *Alleyne* claim was raised, colorably implicates sentencing legality, I question the Superior Court's practice in not affording the parties an opportunity to be heard before rendering judgment. This is a questionable practice, as recognized by two learned members of the panel below. *See Commonwealth v. Wolfe*, 106 A.3d 800, 807, 809 (Pa. Super. 2014) (Bowes, J., concurring, joined by Jenkins, J.) ("I am extremely hesitant to extend [existing Superior Court decisions] absent adequate briefing" and noting "absent adequate briefing, our Supreme Court has declined to *sua sponte* address complex illegal sentencing questions") (citations omitted). As a matter of fairness and prudence, the practice generally should be avoided. *See Freed v. Geisinger Med. Ctr. Geisinger)*, 5 A.3d 212, 214 (Pa. 2010) (noting reargument was granted out of recognition that, prior to *sua sponte* overruling prior decision and applying new decision retroactively, parties should be afforded opportunity to be heard); *Coady v. Vaughn,* 770 A.2d 287, 294 (Pa. 2001) (Castille, J., concurring) (we should "not indulge the conceit that, without adversarial presentations, it is possible to discern any and all arguments that may be made" on given issue). Advocacy is essential to the proper discharge of the appellate review function, and it seems a small matter to afford the

parties a chance to do so. Participation can serve the salutary function of avoiding error below, sparing this Court the need to review, and in a situation such as this one, perhaps avoiding the necessity to focus on two cases, rather than one, to address related issues: here, the power to raise a waived *Alleyne* claim *sua sponte*, and the merits of the constitutional claim so raised.

Instances where a defendant seeks benefit of the new constitutional rule represented by *Alleyne* can arise in four distinct circumstances: cases where the defendant preserved an *Alleyne* claim before the decision was handed down and his direct appeal is still pending (an easy case: the defendant gets the benefit of the new rule); cases where the defendant faces trial after *Alleyne* and seeks its benefit (also an easy case, not implicating retroactivity, leaving aside issues of implementing the new rule, *see Hopkins*, *supra*;) cases where the defendant did not raise and preserve the claim at trial before (or after) *Alleyne* was decided, but seeks retroactive benefit of the new rule on direct appeal; and cases where the defendant's judgment is final and the defendant seeks retroactive benefit of the new rule on collateral attack.

This case presents an entirely different, artificial scenario: the defendant neither anticipated the *Alleyne* rule nor sought its post-issuance benefit, but the Superior Court raised the claim and awarded relief. The Majority candidly recognizes the issue of the propriety of the Superior Court raising a retroactive *Alleyne* claim, on grounds the sentence is "illegal." The Majority then takes the perfectly reasonable stance that the Commonwealth's failure to address the line of decisions beginning with *Commonwealth v. Aponte*, 855 A.2d 800 (Pa. 2004), which has found *Apprendi*-based[1] claims to

---

[1] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

implicate Pennsylvania's illegal sentencing doctrine,[2] warrants deferring the sentencing legality issue to *Commonwealth v. Barnes*, 122 A.3d 1034 (Pa. 2015) (*per curiam*), where the issue is better developed. I have no objection to deferral. However, deferral raises the question of why we do not hold this case — involving a non-preserved *Alleyne* claim being treated as if it were a claim of preserved trial error — in reserve pending determination of *Barnes*. Any defendant facing a new prosecution under 42 Pa.C.S. §9718 can avail himself of *Alleyne* and *Hopkins* to strike the statute.

This brings me to a broader point. Again, some *Alleyne* claims may seek vindication of preserved issues, some may look backward for retroactive relief, and some may involve new prosecutions, seeking to invalidate specific statutes on grounds of facial unconstitutionality. The Court, which does not have total control over the timing of the matters that ripen for decision, is not necessarily positioned to decide new-federal-rule implementation issues in the most logical fashion, or in a fashion allowing for appreciation of relevant nuances. By sheer happenstance, *Hopkins* was decided first, and it involved a new, post-*Alleyne* prosecution arising on our direct appeal docket, following a trial judge holding the statute there facially unconstitutional in the wake of *Alleyne*.[3] We acted without the benefit of the Superior Court's screening function; and,

---

[2] As the Majority notes, the Commonwealth recognizes *Alleyne* is an extension of the *Apprendi* doctrine.

[3] *Hopkins* involved a mandatory minimum sentence imposable by a judge under 18 Pa.C.S. §6317(a), upon finding a specified drug offense occurred within 1,000 feet of, among other places, a school. *Hopkins*, 117 A.3d at 249. An *Alleyne*-style claim under Section 6317(a) was not likely to be raised and preserved prior to *Alleyne*, since the core of the constitutional rule is based upon the jury trial right. Operating in a landscape without the specifics of the *Alleyne* holding (much less *Hopkins*), few defendants would demand the jury be tasked with determining if the crimes occurred so near to a school. This is a reality facial challenges obscure: some of the mandatory minimum statutes operated to shield juries from learning things about the defendant, or the crime, many defendants would rather the jury not know. This is particularly true of objective facts, (continued…)

because the appeal did not follow an order granting allocatur, there was not a broad notice to the bench and bar of the potential importance of the case — which may explain the absence of an *amicus* brief on the prosecution side in *Hopkins* providing the sort of broad perspective represented by the able *amicus* briefs, filed on both sides, in this appeal.[4]

Meanwhile, cases involving retroactive application of *Alleyne*, like this one, and *Barnes* — which optimally should have been decided before, or along with, *Hopkins* — percolated through the Superior Court. The briefing and circumstances in this case and other pending cases make it apparent the question of how best to implement new federal constitutional rules may require more nuance than the *Hopkins* Court had any reason to appreciate. *See*, *e.g.*, Majority Opinion, slip op. at 9-10 (summarizing PDAA *amicus* brief here).

My concerns about implementing new rules are not limited to statutes affected by *Alleyne*. Many new rules devised by the United States Supreme Court affect areas of Pennsylvania criminal law controlled, or affected, by statutory provisions. In the past several years, the Court has had to take measures to guide implementation of new rules announced in cases such as *Atkins v. Virginia*, 536 U.S. 304 (2002) (barring execution of murderers determined to be intellectually disabled),[5] and *Miller*, *supra*.[6]

---

(…continued)
such as age, prior crimes, etc.… It is another reason I believe pre-*Alleyne* prosecutions must be viewed differently.

[4] The *Hopkins* docket reflects that, shortly before oral argument, the Pennsylvania District Attorneys Association (PDAA) sought leave to participate in oral argument, despite not having filed an *amicus* brief. Leave was denied. The Attorney General did not seek to participate via brief or argument.

[5] *See Commonwealth v. Sanchez*, 36 A.3d 24 (Pa. 2011); *Commonwealth v. Miller*, 888 A.2d 624 (Pa. 2005).

For my part, *Hopkins* having been decided, and the Court having reaffirmed it here, I recognize its current force in the context of post-*Alleyne* prosecutions, where facial challenges are raised. But I am uncomfortable with a retroactive application of a "facially-and-fatally-infected-statute" approach, deriving from the happenstance that *Hopkins* proceeded to decision first, where the infection, in this case, reaches back in time to a case proceeding to verdict before *Alleyne*, where no Sixth Amendment objection was ever lodged, and the core of the Sixth Amendment right powering *Alleyne* was not violated.

In the circumstances, I would defer decision of this case until *Barnes* decides the "illegal sentence" question. I respect the Majority's determination to proceed to decision despite the posture of this case, given the practical and salutary benefit of providing a more immediate answer to guide the post-*Alleyne* prosecution, facial-challenge scenario not presented in this case. For my part, I cannot separate the proper decision in this case from the actual circumstances in which it arose, which implicate retroactivity. In my judgment, neither the trial court nor defense counsel here committed any error; and even if error could be found, it was harmless under these circumstances.

Accordingly, I would vacate the order of the Superior Court and remand for consideration of the claims appellee actually raised on his appeal.

---

(…continued)
[6] *See Commonwealth v. Cunningham*, 81 A.3d 1 (Pa. 2013); *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013).