IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Dustin Leymeister,          :
          Petitioner          :
                            :
      v.          :  No. 719 C.D. 2023
                            :
Pennsylvania Parole Board,          :
          Respondent          :  Submitted:  July 5, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED:  August 21, 2024

Petitioner Robert Dustin Leymeister (Leymeister), an inmate currently incarcerated within our Commonwealth's prison system, petitions for review of Respondent Pennsylvania Parole Board's (Board) June 21, 2023 decision. Through that decision, the Board, in relevant part, affirmed its refusal to award Leymeister credit towards his carceral sentence for time he had spent residing at a community corrections center.[1] We affirm.

---

[1] "Community corrections center" is statutorily defined as "[a] residential program that is supervised and operated by the [D]epartment [of Corrections (Department)] in accordance with [Chapter 50 of the Prisons and Parole Code (Parole Code), 61 Pa. C.S. §§ 5001-5008]." 61 Pa. C.S. § 5001. Per the Department of Corrections' administrative regulations, a "community corrections center" is a "minimum-security community-oriented facility operated or contracted by the Department for the purpose of facilitating special programs." 37 Pa. Code § 91.1. In addition, the Department's administrative regulations also explain that "[c]ommunity corrections centers are residences in the community with custodial structure and strong emphasis on guidance and counseling. These centers serve those inmates who qualify and who should benefit from a gradual reintegration into society." 37 Pa. Code § 94.2(c)(1).

## I. Background

The relevant facts are as follows. Leymeister pled guilty to a single count of aggravated assault and, on September 9, 2014, was sentenced by the Court of Common Pleas of Schuylkill County (Common Pleas) to between 8 and 16 years in state prison. Certified Record (C.R.) at 1. The Board subsequently issued a decision on March 28, 2015, that paroled Leymeister to Wernersville community corrections center (CCC), at which point the maximum date on his 2014 sentence was June 11, 2022. *Id.* at 6-8.[2]

Leymeister's release on parole did not mark the end of his troubles, however. On September 8, 2015, the Board determined that there was probable cause that Leymeister had violated the terms of his parole and ordered that he be held in a parole violator center, while also directing that a parole violation hearing be held "in abeyance, pending completion of recommended programming." *Id.* at 14. Thereafter, on May 2, 2016, the Board declared that Leymeister was a technical parole violator (TPV), due to his failure to successfully complete his assigned program at Wernersville CCC, and ordered him to serve six months of backtime on his 2014 sentence as a result. *Id.* at 15-19. Leymeister was then automatically reparoled on September 15, 2016. *Id.* at 20-24.

Shortly thereafter, the Board declared Leymeister delinquent effective October 1, 2016. *Id.* at 25. Leymeister was subsequently arrested by police in Pottsville, Pennsylvania, on November 29, 2016. *Id.* at 30. On January 24, 2017, the Board again recommitted Leymeister as a TPV, due to his decision to change his residence without permission, and ordered that he be held until he completed "prescribed programs" or six months had passed, whichever occurred first. *Id.* at 26-

---

[2] Leymeister was not actually released from prison until June 22, 2015. *See* C.R. at 9.

27. The Board also recalculated the maximum date on Leymeister's 2014 sentence as July 9, 2022. *Id.* The Board then modified its January 24, 2017 decision on February 28, 2017, recalculating the maximum date on his 2014 sentence as August 9, 2022, and ordering that he be detained pending the disposition of charges resulting from his November 2016 arrest. *Id.* at 30-31. Thereafter, Leymeister was convicted in Common Pleas of possession of a controlled substance. *Id.* at 32. The Board responded by issuing a decision on September 29, 2017, through which it declared him to be a convicted parole violator (CPV) and, as a consequence, ordered that he serve nine months of backtime on his 2014 sentence. *Id.* at 32-33. The Board then paroled Leymeister from his 2014 sentence on October 18, 2018. *Id.* at 36-37. Leymeister was not actually released from prison until January 29, 2019, at which point he was directed to reside at Wernersville CCC. *See* C.R. at 38-39.

Once again, this release did not mark the end of Leymeister's troubles. On November 20, 2020, the Board declared Leymeister delinquent effective November 17, 2020. *Id.* at 42. He was then arrested in Pottsville on January 9, 2021, which prompted the Board to issue a detainer warrant that same day. *Id.* at 43, 46-48. The Board then issued a decision on February 10, 2021, through which it declared Leymeister to be a TPV, consequently ordered him to serve nine months of backtime on his 2014 sentence, and recalculated the maximum date on that sentence as October 1, 2022. *Id.* at 46-48. In addition, the Board ordered that Leymeister be detained pending resolution of charges resulting from his January 2021 arrest. *Id.* at 46. On October 26, 2021, Leymeister pled guilty to one count each of fleeing or attempting to elude a police officer; driving while operating privilege was suspended or revoked; and careless driving, as well as two counts of violating "duties at stop sign," and was sentenced by Common Pleas to an aggregate carceral term of one to

3

two years in state prison. *Id.* at 53. On January 25, 2022, Leymeister waived his right to a parole revocation hearing. *Id.* at 51. On February 2, 2022, the Board ordered that Leymeister be recommitted as a CPV and to serve 12 months of backtime on his 2014 sentence as a result. *Id.* at 90-91. In addition, the Board declined to award Leymeister any credit for time spent at liberty on parole and recalculated the maximum date on his 2014 sentence as May 6, 2025. *Id.* at 91.

On February 22, 2022, Leymeister challenged the Board's February 2, 2022 decision by submitting an administrative remedies form. *Id.* at 94-101. Therein, Leymeister argued that the Board's decision was erroneous for three reasons. First, the Board did not award him credit towards his 2014 sentence for the time he spent at Wernersville CCC between January 29, 2019, and March 6, 2020. *Id.* at 96, 100. Second, the Board failed to properly apply all credit towards his 2014 sentence for time he served in presentence detention on the Board's detainer. *Id.* at 96. Finally, the Board did not provide a legally adequate reason for declining to award him credit for time served at liberty on parole. *Id.*

The Board responded on March 22, 2023, by ordering that an evidentiary hearing be held regarding the question of whether Leymeister should receive credit for the time he spent at Wernersville CCC in 2019 and 2020. *Id.* at 102-03. This hearing was held on April 25, 2023. *Id.* at 104. During the course of the hearing, Leymeister testified that the conditions at Wernersville CCC were "the equivalent of a work release program for [him] when [he] was in the county jail[,]" to which Daniel Walters, a parole agent assigned to the hearing, responded by objecting on the basis that such a comparison was merely speculative. *Id.* at 111, 133. The Board's hearing examiner then sustained the Board's objection and prevented Leymeister from making such a comparison. *Id.* at 113-14. Leymeister then continued by

4

offering additional testimony about the conditions at Wernersville CCC. *Id.* at 114-122. Walters then presented testimony from Corey Barton, Wernersville CCC's director, who testified that his facility does not have doors that are locked from the inside, fences, or bars on its windows. Barton further testified that parolees are allowed to leave Wernersville CCC for work or leisure activities and can "walk through the residence without escorts[.]" *Id.* at 126-27. In addition, Barton testified that parolees who leave the facility without authorization are not charged with escape and that the facility's employees do not have authorization to prevent a parolee from making an unauthorized departure or to use physical restraints. *Id.* at 126.

On April 25, 2023, the Board's hearing examiner issued a decision ruling that Leymeister failed to meet his burden to show that the circumstances of his confinement at Wernersville CCC in 2019 and 2020 were functionally equivalent to incarceration. *Id.* at 133-35. Accordingly, the hearing examiner recommended that Leymeister be given no credit towards his 2014 sentence for the time he spent at Wernersville CCC between January 29, 2019, and March 6, 2020. *Id.* at 135. The Board adopted the hearing examiner's decision and formally denied Leymeister's Wernersville CCC time credit request on May 11, 2023. *Id.* at 138-40. Leymeister then filed an administrative remedies form on May 23, 2023 challenging the Board's May 11, 2023 decision. *Id.* at 149-156. The Board responded on June 21, 2023, via letter, through which it denied both of Leymeister's administrative challenges (*i.e.*, the arguments he had made through his February 22, 2022 and May 23, 2023 administrative remedies forms). *Id.* at 157-59. This appeal to our Court followed shortly thereafter.

## II. Discussion

We reorder and summarize Leymeister's arguments as follows.[3] First, Leymeister acknowledges that the General Assembly amended the Parole Code several years ago to specifically state that "a parolee is at liberty on parole" when residing at a CCC. Leymeister's Br. at 19-20 (quoting Section 6138(a)(2.3) of the Parole Code, 61 Pa. C.S. § 6138(a)(2.3)).[4] He also admits that this Court has already held that this amendment can be applied retroactively. *See id.* at 20-22 (citing *El-Amin v. Pa. Parole Bd.*, 273 A.3d 1255 (Pa. Cmwlth. 2022). Nevertheless, Leymeister maintains that *El-Amin* was wrongly decided and that retroactive application of this statute violates the *ex post facto* clauses of the Pennsylvania and United States Constitutions.[5] *Id.* at 19-22. Second, he maintains that the Board's hearing examiner abused her discretion by preventing him from testifying that the conditions at Wernersville CCC were comparable to those he experienced while serving county-level sentences that included work release components. *Id.* at 11-18.

We need only address Leymeister's first argument to effectively resolve this appeal. Generally speaking,

> [t]he *ex post facto* prohibition bars enactments by the States "which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000) (citing *Collins v.*

---

[3] Our review of Board actions "is limited to determining whether the [Board's] decision was supported by substantial evidence, whether an error of law occurred[,] or whether constitutional rights were violated." *Ramos v. Pa. Bd. of Prob. & Parole*, 954 A.2d 107, 109 n.1 (Pa. Cmwlth. 2008).

[4] This statute reads as follows: "A parolee is at liberty on parole when the parolee is residing at a [CCC], community corrections facility [(CCF),] or group-based home for purposes of this section. This paragraph does not apply to parolees detained on the [B]oard's warrant or recommitted as a [TPV] to a [CCC] or [CCF]." 61 Pa. C.S. § 6138(a)(2.3).

[5] PA. CONST. art. I, § 17; U.S. CONST. art. I, § 9.

> *Youngblood*, 497 U.S. 37, 42 (1990)). "Retroactive changes in laws governing parole of prisoners, in some instances may be violative of this precept." *Id.* (citing *Weaver v. Graham*, 450 U.S. 24, 32 (1981); *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 508-09 (1995)). Our Supreme Court has recognized the potential of an *ex post facto* violation by a change in a parole law under the Pennsylvania and United States Constitutions. *Coady v. Vaughn*, 770 A.2d 287, 290 (Pa. 2001). "Two critical elements must be present for a criminal or penal law to be violative of the *ex post facto* clause: 'It must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.'" *Cimaszewski v. Pa. Bd. of Prob. & Parole*, 868 A.2d 416, 423 (Pa. 2005) (quoting *Weaver*, 450 U.S. at 29).

*Toland v. Pa. Bd. of Prob. & Parole*, 263 A.3d 1220, 1235 (Pa. Cmwlth. 2021) (cleaned up).

Leymeister's first argument is based upon his position that retroactive application of Section 6138(a)(2.3) of the Parole Code constitutes an *ex post facto* clause violation. We disagree. Nearly 40 years ago, our Supreme Court in *Cox v. Board of Probation and Parole*, held that parolees must be given an opportunity to show that the restrictions imposed upon their liberty at an inpatient facility or other, similar place were so "onerous" as to entitle them to credit towards their carceral sentence or sentences. 493 A.2d 680, 683-84 (Pa. 1985). This was due, in large part, to the General Assembly's failure to define the term "at liberty on parole" in this context. *See id.* at 682-84.

> As the Supreme Court held in *Cox*, specific circumstances may constitute such restrictions on liberty as to require credit toward a sentence on recommitment. Although no formulation will apply to all potential individual circumstances, . . . ordinary restrictions such as those that attend many inpatient treatment programs are not so onerous as to require a credit. The Court holds otherwise, however, when the restrictions upon a parolee become

7

such that they destroy any sense of being "at liberty on parole" and, consequently, meet the *Cox* standard.

*Torres v. Pa. Bd. of Prob. & Parole*, 861 A.2d 394, 400-01 (Pa. Cmwlth. 2004). "The *Cox* analysis requires a parolee to show the specific restrictions on his liberty at a particular facility are the equivalent of incarceration; thus, the *Cox* comparison is between restrictions on the parolee at a facility and restrictions on the parolee when he was in prison." *Medina v. Pa. Bd. of Prob. & Parole*, 120 A.3d 1116, 1123-24 (Pa. Cmwlth. 2015). To that end, we have previously held that

> a parolee who has been forbidden generally to leave a particular inpatient drug and alcohol rehabilitation facility for a specified period for which credit is sought, who is under 24-hour supervision during the specified period and who is not permitted to make required trips outside of the facility without an escort cannot reasonably be described as being "at liberty on parole."

*Torres*, 861 A.2d at 401. When presented with circumstances of that nature, we would be compelled to conclude that the parolee was entitled to sentence credit for the time their liberty was impinged upon by those restrictions. *Id.* at 400-01.

This state of affairs changed on June 30, 2021, when the General Assembly amended the Parole Code by adding Section 6138(a)(2.3). As mentioned above, this statute reads as follows: "A parolee is at liberty on parole when the parolee is residing at a [CCC], [CCF,] or group-based home for purposes of this section. This paragraph does not apply to parolees detained on the [B]oard's warrant or recommitted as a [TPV] to a [CCC] or [CCF]." 61 Pa. C.S. § 6138(a)(2.3). In other words, Section 6138(a)(2.3) of the Parole Code obviates the need for fact-finding regarding the nature of the liberty-restricting conditions at those kinds of facilities, because it specifically declares that a parolee is at liberty on parole when they reside at such a place. *Id.*

8

We addressed both this statutory amendment and the prospect of its retroactive effect in *El-Amin*. In that matter, the petitioner sought credit from the Board for time he had spent residing at two CCCs and a CCF while on parole in 2017 and 2018. 273 A.3d at 1257-58. The Board convened a *Cox* hearing on March 30, 2021, and denied El-Amin's credit request on April 23, 2021. *Id.* at 1258. El-Amin then challenged the Board's denial via an administrative remedies form, but the Board affirmed the denial through a decision issued on June 28, 2021. *Id.* El-Amin subsequently appealed to our Court, whereupon we affirmed the Board's decision.

Though all of the Board's actions, including the *Cox* hearing and consequent rulings, occurred before Section 6138(a)(2.3) was enacted, El-Amin nevertheless argued, in relevant part, "that this amendment [was] a change in the law and, because it is punitive in nature, *i.e.*, it extends the length of incarceration, it [could not] be applied to him retroactively." *Id.* at 1260. We, however, disagreed with El-Amin's characterization of this amendment. In doing so, we explained that

> [b]y enacting Section 6138(a)(2.3) of the Parole Code, the General Assembly did not change the law. Rather, the General Assembly codified the long line of precedents which held that, because parolees residing in a CCC or CCF generally are allowed to leave with permission for various reasons, including employment, employment searches, leisure activities, shopping, and attending medical and Social Security appointments, the CCCs and CCFs do not restrict a parolee's ability to leave; the staff at CCCs and CCFs are generally prohibited from stopping any resident from leaving the building, even if he/she chooses to leave without signing out; and, although the doors at CCCs and CCFs are locked from the outside to prohibit unauthorized people from entering the building, parolees can freely exit the buildings; therefore, time spent by a parolee at a CCC or CCF is generally treated as time spent at liberty on parole.

9

*Id.* In the *El-Amin* Court's view, "the General Assembly [simply] codified this Court's common law in this area" by adding Section 6138(a)(2.3) to the Parole Code. *Id.* Since this codification did not actually change the relevant law, we concluded that El-Amin's argument that Section 6138(a)(2.3) could not be applied "retroactively" was baseless. *Id.*

We find no fault in the *El-Amin* analysis and decline Leymeister's invitation to revisit our holding from that matter regarding Section 6138(a)(2.3) of the Parole Code. Simply put, this statute does not alter the preexisting standards for determining whether a parolee is entitled to credit for time served at liberty on parole. *Id.* As such, any concerns regarding *ex post facto* clause violations are misplaced.

It is therefore immaterial whether the hearing examiner abused her discretion by refusing to let Leymeister compare the conditions of confinement at Wernersville CCC with those he experienced during county-level work release programs. As already mentioned, Leymeister sought credit for time spent residing at Wernersville CCC. However, since Section 6138(a)(2.3) of the Parole Code specifically defines "liberty on parole" as being, in relevant part, "when the parolee is residing at a CCC," 61 Pa. C.S. § 6138(a)(2.3), and Leymeister's situation did not fall within any of the exceptions contained in that statute, *see id.*,[6] the Board was legally prohibited from awarding him the specific type of time credit he sought. Accordingly, even if the hearing examiner's evidentiary ruling was theoretically in error, that error was ultimately harmless in practice.

---

[6] Section 6138(a)(2.3)'s definition of "at liberty on parole" "does not apply to parolees detained on the [B]oard's warrant or recommitted as a [TPV] to a [CCC] or [CCF]." 61 Pa. C.S. § 6138(a)(2.3).

### III. Conclusion

In accordance with the foregoing analysis, we affirm the Board's June 21, 2023 decision, albeit on different grounds.[7]

---

ELLEN CEISLER, Judge

---

[7] We may affirm an administrative agency's decision based upon any proper reason supported by the record. *See Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1065 (Pa. 2007).

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Dustin Leymeister,         :
                  Petitioner       :
                            :
       v.                  :  No. 719 C.D. 2023
                            :
Pennsylvania Parole Board,      :
                  Respondent   :

# **O R D E R**

AND NOW, this 21st day of August, 2024, it is hereby ORDERED that Respondent Pennsylvania Parole Board's June 21, 2023 decision is AFFIRMED.

ELLEN CEISLER, Judge