IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Robinson,                         :
                          Petitioner      :
                                          :
            v.                            :    No. 253 M.D. 2022
                                          :    Submitted: March 17, 2023
Pennsylvania Parole Board,                :
                          Respondent      :

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE DUMAS                                   FILED: November 30, 2023

            Before this Court, in our original jurisdiction, are the preliminary
objections in the nature of a demurrer filed by the Pennsylvania Parole Board
(Board).  The Board challenges the Petition for Writ of Mandamus (Petition) filed
*pro se* by Anthony Robinson (Petitioner).  Petitioner has requested that this Court
compel the Board to grant his automatic reparole.  For the following reasons, we
sustain the Board's demurrer and dismiss the Petition with prejudice.

## I. BACKGROUND[1]

            On January 10, 2020, Petitioner was discharged from the Harrisburg
Community Corrections Center (CCC) and returned to State Correctional Institution
(SCI)-Laurel Highlands.[2]  On March 30, 2020, the Board recommitted Petitioner as

---

[1] A complete record from the Board is not before the Court.  We derive the following facts, which we accept as true for purposes of this disposition, from the Petition and its attached exhibits. *See* Pet., 4/22/22.  *See Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 310 n.1 (Pa. Cmwlth. 2019) (observing that courts reviewing preliminary objections may not only consider the facts pleaded in the petition for review, but also any documents or exhibits attached to it).

[2] The reasons for his unsuccessful discharge from the Harrisburg CCC are unclear. *See* Pet., Ex. B, Notice of Bd. Dec., 3/30/20, at 1 (generally citing evidence of violations). Nevertheless, we note that the Board may place a technical parole violator (TPV) in an SCI if that TPV is accused of violating the CCC's rules of conduct.  61 Pa.C.S. § 6138(c)(1.4).

a technical parole violator (TPV) to a CCC with automatic reparole no later than July 10, 2020, provided Petitioner remained in good standing with the Board and successfully completed all recommended programs. However, Petitioner twice refused placement at a CCC.[3] On July 9, 2020, the Board issued a warrant to commit and detain Petitioner for parole rescission. *See* Pet., Ex. D, Bd.'s Warrant, 7/9/20.

Citing in relevant part Petitioner's placement refusals, the Board scheduled a parole rescission hearing for July 23, 2020. At the hearing, Petitioner explained that his refusals were due to health concerns amid the COVID-19 pandemic.[4] Petitioner is on dialysis and wished to avoid the crowded environment at a CCC.

On August 4, 2020, the Board rescinded Petitioner's automatic reparole and agreed to consider an approved home plan on or after January 2021.[5] Petitioner filed an administrative appeal asserting a violation of his Eighth Amendment right of protection against cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Board denied administrative relief and affirmed its prior decision. *See* Pet., Ex. H, Bd.'s Resp., 11/2/21. The Board explained that it rescinded Petitioner's automatic reparole because Petitioner twice refused placement into a CCC. *See id.*

On April 21, 2022, Petitioner commenced this action in mandamus, requesting that this Court direct the Board to "comply with the Eighth Amendment,"

---

[3] Petitioner avers that his parole agent, Ms. Laura Weimer, alleged three refusals. Pet., ¶13 (citing Ex. E, Notice of Rescission Hr'g, 7/9/20). However, the notice indicates only two placement refusals. Notice of Rescission Hr'g.

[4] Petitioner was counseled at the hearing. *See* Pet., Ex. F, Letter from Pub. Defender, 8/3/20.

[5] Petitioner avers that the Board approved his home plan. Pet., ¶17. That is unclear from the documents attached. *See* Pet., Ex. A, Notice of Bd. Dec., 8/4/20 ("approved home plan to be available at next review"), Ex. G, Admin. Remedies Form, 9/3/20, p.2 (suggesting that the Board "approved [P]etitioner's request to submit a home plan").

"rescind its decision," and "re-establish [] Petitioner's parole." Pet., *ad damnum* cl. The Board timely filed preliminary objections in the nature of a demurrer, asserting that (1) Petitioner lacks a clear right to the relief requested and (2) the Board lacks a corresponding duty to grant the requested relief.[6] Prelim. Objs., 5/17/22, at 6.

## II. DISCUSSION[7]

Petitioner seeks mandamus relief. Mandamus is an extraordinary remedy "designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the petitioner, a corresponding duty in the

---

[6] The Board also asserted that Petitioner's mandamus action was unsuitable for an Eighth Amendment claim and that he has an adequate and appropriate remedy available pursuant to 42 U.S.C. § 1983. *See* Prelim. Objs. at 5-6. This Court has previously addressed an Eighth Amendment claim in the context of a mandamus action. *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1038-43 (Pa. Cmwlth. 2014). While petitioners in that case were unsuccessful in articulating a clear right to relief based on the asserted denial of medical care, the *Tindell* Court did not "foreclose the possibility" that a valid claim could sound in mandamus. *Id.* at 1041. Here, however, we need not examine whether housing Petitioner at a CCC during the COVID-19 pandemic would have exposed Petitioner to a substantial risk of serious harm or whether Petitioner has sufficiently pleaded that the Board's conduct evinced a deliberate indifference to his medical needs. *See id.* at 1039. In response to the Board's preliminary objections, Petitioner repeatedly rejected the relevance of *Tindell*, Answer, 6/13/22, ¶¶ 19-21, 30, and clarified that he seeks mandamus relief related only to the Board's rescission of his reparole. *Id.*, ¶ 30. Moreover, Petitioner pleaded explicitly that "this case is not an [Eighth] Amendment prison conditions case (or an [Eighth] Amendment community corrections conditions case)." *Id.*, ¶ 25 (emphasis removed). Thus, according to Petitioner, Section 1983 "is an unsuitable legal instrument to resolve this issue." *Id.*, ¶¶ 30-31.

[7] In ruling on preliminary objections, we must "accept as true all well-pleaded material allegations in the petition for review," as well as inferences reasonably deduced therefrom. *Garrison v. Dep't of Corr.*, 16 A.3d 560, 563 n.5 (Pa. Cmwlth. 2011). The Court need not accept as true conclusions of law, "unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* To sustain preliminary objections, "it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010).

A preliminary objection in the nature of a demurrer admits well-pleaded facts and inferences reasonably deduced therefrom in order to test the legal sufficiency of a petition for review. *Id.* A demurrer can "be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted." *Id.*

3

respondent, and want of any other adequate and appropriate remedy." *Toland v. Pa. Bd. of Prob. & Parole*, 263 A.3d 1220, 1232 (Pa. Cmwlth. 2021) (cleaned up). A petitioner may not use mandamus "to compel a purely discretionary act." *Coady v. Vaughn*, 770 A.2d 287, 290 (Pa. 2001). "[T]he purpose of mandamus is not to establish legal rights, but to enforce rights [that] are already established." *Clark v. Beard*, 918 A.2d 155, 159 (Pa. Cmwlth. 2007).

It is well settled that the Board has been granted broad discretion in parole matters by the legislature. *Coady*, 770 A.2d at 289; *Rogers v. Pa. Bd. of Prob. & Parole*, 724 A.2d 319, 322 (Pa. 1999); *Commonwealth v. Vladyka*, 229 A.2d 920, 922 (Pa. 1967); *see also* Sections 6131-32 of the Prisons and Parole Code (Code), 61 Pa.C.S. §§ 6131-32. The scope of this discretion extends to the recission and denial of parole. *Johnson v. Pa. Bd. of Prob. & Parole*, 532 A.2d 50, 53 (Pa. Cmwlth. 1987). Further, "mandamus will not lie where the substance of the [B]oard's discretionary action is the subject of the challenge." *Coady*, 770 A.2d at 290; *Weaver v. Pa. Bd. of Prob. & Parole*, 688 A.2d 766, 777 (Pa. Cmwlth. 1997) (recognizing that mandamus is inappropriate to compel the exercise of "discretion in a certain manner or to arrive at a particular result"); *see also Homa v. Pa. Bd. of Prob. & Parole*, 192 A.3d 329, 334 (Pa. Cmwlth. 2018) (limiting mandamus relief to where the Board has "failed to follow its statutory duties").

## A. The Parties' Arguments

In its preliminary objections, the Board asserts that Petitioner cannot establish a clear right to relief or that the Board had a duty to grant the relief requested. *See* Bd.'s Br. at 6-9. According to the Board, its decision to rescind Petitioner's automatic reparole was discretionary, and, thus, Petitioner's mandamus claim fails. *See id.* In support, the Board relies on *Henderson v. Pennsylvania*

4

*Parole Board*, 277 A.3d 633 (Pa. Cmwlth. 2022), and focuses on Petitioner's status while serving his recommitment and awaiting reparole. According to the Board, Petitioner never achieved parolee status and, therefore, lacked any vested liberty interest to challenge the Board's discretionary act. *See generally* Bd.'s Br.

Although his brief is difficult to parse, Petitioner appears to challenge the Board's assertion that he was never a parolee. *See* Pet'r's Br. at 8 (suggesting the Board's assertion "is a misconception"). According to Petitioner, despite his ongoing confinement at SCI-Laurel Highlands, the Board's administrative actions document his status. *See* Pet'r's Br. at 8-9. Essentially, Petitioner argues that he was paroled as of July 10, 2020, regardless of where he was housed at the time. Petitioner also rejects the Board's reliance on *Henderson*. According to Petitioner, *Henderson* merely precludes automatic reparole for those TPVs that commit assaultive misconducts. Because Petitioner never received a misconduct for assaultive behavior, Petitioner contends that *Henderson* is inapposite. *See id.* at 9-11. Petitioner also suggests that the Board's efforts to deny his parolee status reveal an underlying strategy to deprive him of due process rights, ignore the public health concerns prevalent at the time, and punish him for seeking more favorable housing. *See id.* at 12-19.

## B. The Board's Reliance on *Henderson* is Persuasive

While not directly on point, the Board's reliance on *Henderson* is persuasive. In that case, the Board recommitted Henderson as a TPV to serve six months' backtime with automatic reparole. 277 A.3d at 634. Following his recommitment, Henderson received a disciplinary misconduct for assaultive behavior.[8] *Id.* Accordingly, the Board rescinded his automatic reparole without a

---

[8] Henderson denied the assaultive behavior but was found guilty and sentenced to 45 days in disciplinary custody. *Henderson*, 277 A.3d at 634-35.

5

hearing. *Id.* at 635. Henderson sought administrative relief, which the Board denied, citing in support Section 6138(d)(5) of the Code.[9] *Id.*

Henderson then petitioned this Court for appellate review, asserting a violation of his due process rights because the Board had rescinded his reparole without a hearing, but this Court denied relief. *See id.* at 636-38. Relying upon the plain language of Section 6138, the Court concluded that the recommitment period

---

[9] At the time *Henderson* was decided, as well as at the relevant times herein, this section provided:

(d) Recommitment to correctional facility.--A technical violator recommitted to a State correctional institution or a contracted county jail under subsection (c) shall be recommitted as follows:

(1) If paroled from a county prison, to the same institution or to any other institution to which the violator may be legally transferred.

(2) If paroled from a State correctional institution, to any State correctional institution or contracted county jail designated by the [Department of Corrections (department)].

(3) Except as set forth in paragraph (4) or (5), the parolee shall be recommitted for one of the following periods, at which time the parolee shall automatically be reparoled without further action by the [B]oard:

(i) For the first recommitment under this subsection, a maximum period of six months.

(ii) For the second recommitment under this subsection for the same sentence, a maximum of nine months.

(iii) For the third or subsequent recommitment under this subsection for the same sentence, a maximum of one year.

(4) The parolee may be reparoled by the board prior to expiration of the time period under paragraph (3) if the [B]oard determines that it is in the best interest of the Commonwealth and the parolee.

(5) The time limit under paragraph (3) shall not be applicable to a parolee who:

(i) Committed a disciplinary infraction involving assaultive behavior, sexual assault, a weapon or controlled substances;

(ii) Spent more than 90 days in segregated housing due to one or more disciplinary infractions; or

(iii) Refused programming or a work assignment.

61 Pa.C.S. § 6138(d) (effective Apr. 16, 2020, to June 29, 2021). Minor and inconsequential amendments have been made to this section. *See* 61 Pa.C.S. § 6138(d) (effective June 30, 2021) (replacing, *e.g.*, "parolee" with "offender").

and automatic reparole provisions "shall not be applicable" to a TPV who has committed assaultive behavior. *Id.* at 636 (quoting 61 Pa.C.S. § 6138(d)(5)(i)) (emphasis in quotation removed). Further, as the Board's authority was limited to "those powers conferred upon it by the General Assembly in clear and unmistakable language," the Court opined that the Board was prohibited from granting the parolee relief. *Id.* at 636 (quoting *Penjuke v. Pa. Bd. of Prob. & Parole*, 203 A.3d 401, 416 (Pa. Cmwlth. 2019)).

In addressing the Board's rescission without a hearing, the Court also clarified a TPV's status during his recommitment. *Id.* at 637-38. According to the Court, "a grant of parole by itself does not vest a prisoner with any protected liberty interest in that parole." *Id.* at 637. The grant of parole is executed when "the prisoner signs the acknowledgement of parole conditions . . . and the Board issues its parole release order . . . ." *Id.* (citing several cases).[10] Because those steps had not occurred, Henderson had not attained the status of a parolee. *See id.* at 638.

Thus, *Henderson* is instructive for two reasons. First, "a prisoner does not attain the status of a 'parolee' until the grant of parole is actually executed." *Id.* at 637. Second, a TPV's conduct following recommitment may endanger or even void an automatic reparole. *Id.* at 636 (citing Section 6138 of the Code).

## C. Petitioner Lacks a Vested Liberty Interest in his Reparole

Petitioner's status is relevant to whether he has a clear right to relief. *See Toland*, 263 A.3d at 1232; *Clark*, 918 A.2d at 159. It is evident that Petitioner never attained parolee status following his recommitment in January 2020.

---

[10] In denying relief, the Court observed that the parolee had availed himself of the prison appeal process in disputing his disciplinary infraction, that the Board's recission decision was mandated by the Code, and that no further process was required. *See Henderson*, 277 A.3d at 637-38.

Whatever the precise circumstances surrounding his unsuccessful discharge from the Harrisburg CCC, upon his recommitment to SCI-Laurel Highlands, Petitioner was confined as a prisoner housed at that institution. As memorialized by the Board's written decision, "[w]hile confined [Petitioner] must abide by the rules and regulations of the institution and comply with the institution's prescriptive program requirements[.]" Pet., Ex. B, Notice of Bd. Dec., 3/30/20, at 1 (unnecessary capitalization removed). Further, the Board informed Petitioner that he was eligible for automatic reparole but clarified that "this Board action *will not take effect* until you have signed the conditions . . .[,] and the release orders . . . have been issued." *Id.* at 3 (unnecessary capitalization removed; emphasis added).

Petitioner has not pleaded, nor is it a reasonable inference from his exhibits, that he signed a form documenting the conditions of his release on parole or that the Board issued orders executing his release. Therefore, on this record and in accordance with this Court's precedent, Petitioner's assertion that he attained parolee status is incorrect.

In *Henderson*, the petitioner's status as a prisoner, rather than a parolee, was significant because it relieved the Board of an obligation to provide him with advance notice and a hearing before rescinding his automatic reparole. In this case, the Board afforded Petitioner a hearing before rescinding his automatic reparole. Nevertheless, Petitioner's status is no less significant here in this mandamus action because it demonstrates that he lacks a vested liberty interest in his reparole. *See Henderson*, 277 A.3d at 637. Because he lacks a vested liberty interest in his reparole, he has no clear legal right to the relief requested, and his mandamus action fails. *See Toland*, 263 A.3d at 1232; *Clark*, 918 A.2d at 159.

**D. The Board has No Duty to Grant Petitioner Reparole**

8

This is not a case in which the Board has failed or refused to abide by its statutory duties. The Board's decision to rescind Petitioner's reparole based on his conduct following recommitment was an appropriate exercise of its discretion. *See Coady*, 770 A.2d at 290; *Johnson*, 532 A.2d at 53. The Board's broad discretion in parole matters is tempered by a statutory duty to provide a brief statement of the reasons for its decision. *Homa*, 192 A.3d at 334 (citing 42 Pa.C.S. § 6139(a)(5)).[11] In *Homa*, for example, the Board issued letters explaining that it had denied the prisoner automatic parole upon reaching his minimum sentence date because, *inter alia*, he had an unsatisfactory supervision history. *Homa*, 192 A.3d at 331.

Here, in its response to Petitioner's administrative appeal, the Board explained that it had rescinded Petitioner's reparole because he "failed to cooperate with the release process during which [he] refused placement in two separate programs in the community" and refused "placement in a treatment program[.]" Pet., Ex. H, Bd.'s Resp., 11/2/21, at 1. The Board's response articulated the basis for its decision. It therefore complied with its statutory duty. *See Homa*, 192 A.3d at 334; 61 Pa.C.S. § 6139(a)(5).

Accordingly, Petitioner cannot establish the Board has a duty to grant the relief requested, and his mandamus action fails on this ground as well. *See Coady*, 770 A.2d at 290; *Weaver*, 688 A.2d at 777; *Toland*, 263 A.3d at 1232; *Homa*, 192 A.3d at 334.

Indeed, Petitioner's conduct deprived the Board of authority to grant reparole. Section 6138(d)(5)(iii) of the Code provides that the time limits placed on a TPV recommitted to a SCI "shall not be applicable" to a prisoner that has "refused programming." 61 Pa.C.S. § 6138(d)(5)(iii). Thus, as this Court recognized in

---

[11] "[W]henever parole is refused by the [B]oard, a brief statement of the reasons for the [B]oard's action shall be file of record . . . ." 61 Pa.C.S. § 6139(a)(5).

*Henderson*, the Board lacked authority to grant Petitioner the relief requested "because it was affirmatively prohibited from doing so . . . ." *Henderson*, 277 A.3d at 636-37. For this reason, too, the Board had no duty to grant Petitioner the relief he requested.

### III. CONCLUSION

Petitioner has not established a clear right to relief. Further, the Board has no corresponding duty to grant the relief requested. For these reasons, Petitioner's mandamus claim fails. Accordingly, this Court sustains the Board's preliminary objections and dismisses Petitioner's Petition for Review with prejudice.[12]

LORI A. DUMAS, Judge

---

[12] In August 2022, Petitioner filed an application to compel the production of a copy of the rescission hearing held on July 23, 2020. *See* Appl. to Compel, 8/17/22. In light of our disposition, we dismiss the application as moot.

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Robinson,           :
                Petitioner  :
                            :
        v.                  :        No. 253 M.D. 2022
                            :
Pennsylvania Parole Board,  :
                Respondent  :

# **O R D E R**

AND NOW, this 30th day of November, 2023, the preliminary objections to Anthony Robinson's Petition for Mandamus, filed by the Pennsylvania Parole Board on May 17, 2022, are SUSTAINED, and the Petition is DISMISSED WITH PREJUDICE. Robinson's Application to Compel, filed August 17, 2022, is DISMISSED AS MOOT.

 

 

_____
LORI A. DUMAS, Judge